# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OV LOOP, INC., a Delaware corporation,

Plaintiff,

v.

MASTERCARD INCORPORATED, and
MASTERCARD INTERNATIONAL
INCORPORATED, both Delaware corporations,

Defendants.

Case No. 1:24-cv-10412-IT

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

LEGAL STANDARD..................................................................................................................7

ARGUMENT .............................................................................................................................7

I.       OV LOOP FAILS TO ALLEGE AN ACTIONABLE REFUSAL TO DEAL. ..................8

      A.       OV Loop Fails to Allege Facts Establishing the "*Aspen Skiing* Exception" to the Rule of No Duty to Deal. .............................................................8

      B.       The "Essential Facilities" Label Does Not Save OV Loop's Claims. ...................12

II.      OV LOOP FAILS TO ALLEGE MONOPOLY POWER...............................................16

      A.       OV Loop Fails to Allege Facts Showing that Mastercard Has Monopoly Power in the First Alleged Relevant Market.........................................................16

      B.       OV Loop Fails to Allege a Relevant Market for "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards."..............19

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adderall XR Antitrust Litig.*,
   754 F.3d 128 (2d Cir. 2014)..............................................................................11

*Aerotec Int'l, Inc.* v. *Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) ......................................................................9, 13

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) ..............................................................19

*Arcesium, LLC* v. *Advent Software, Inc.*,
   2021 WL 1225446 (S.D.N.Y. Mar. 31, 2021) ....................................................11

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)......................................................................................7, 14

*Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985)...........................................................................................10

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)...........................................................................................14

*Benjamin* v. *Aroostook Med. Ctr.*,
   937 F. Supp. 957 (D. Me. 1996) ........................................................................16

*Blue Cross & Blue Shield United of Wis.* v. *Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) .............................................................................15

*City of Moundridge* v. *Exxon Mobil Corp.*,
   471 F.Supp.2d 20 (D.D.C. 2007) .......................................................................17

*Covad Commc'ns Co.* v. *BellSouth Corp.*,
   374 F.3d 1044 (11th Cir. 2004) .........................................................................11

*In re Curran*,
   855 F.3d 19 (1st Cir. 2017)..................................................................................7

*Diaz Aviation Corp.* v. *Airport Aviation Servs., Inc.*,
   716 F.3d 256 (1st Cir. 2013)............................................................................7, 8

*Discover Fin. Servs., Inc.* v. *Visa U.S.A., Inc.*,
   2005 WL 8178487 (S.D.N.Y. Nov. 4, 2005)......................................................17

*Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*,
504 U.S. 451 (1992)..................................................................18, 20

*Eatoni Ergonomics, Inc.* v. *Research in Motion Corp.*,
486 F. App'x 186 (2d Cir. 2012) ...............................................13

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007)..........................................................10

*Epic Games, Inc.* v. *Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .......................................................20

*Evergreen Partnering Grp., Inc.* v. *Pactiv Corp.*,
720 F.3d 33 (1st Cir. 2013) ...........................................................9

*Fitzgerald* v. *Harris*,
549 F.3d 46 (1st Cir. 2008)............................................................7

*Four Corners Nephrology Assocs., P.C.* v. *Mercy Med. Ctr. of Durango*,
582 F.3d 1216 (10th Cir. 2009) ..................................................12

*Green Country Food Mkt. Inc.* v. *Bottling Grp., LLC*,
371 F. 3d 1275 (10th Cir. 2004) ................................................19

*United States* v. *Grinnell Corp.*,
384 U.S. 563 (1966).......................................................................8

*Verizon Commc'ns* v. *Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)...................................................2, 9, 10, 11

*M&M Med. Supplies & Serv., Inc.* v. *Pleasant Valley Hosp., Inc.*,
981 F.2d 160 (4th Cir. 1992) ......................................................18

*Marion HealthCare, LLC* v. *S. Ill. Hosp. Servs.*,
41 F.4th 787 (7th Cir. 2022) .......................................................12

*Maui Jim, Inc.* v. *SmartBuy Guru Enters.*,
386 F. Supp. 3d 926 (N.D. Ill. 2019) .........................................20

*New York* v. *Meta Platforms, Inc.*,
66 F.4th 288 (D.C. Cir. 2023)....................................................10

*Midwest Gas Servs., Inc.* v. *Ind. Gas Co., Inc.*,
317 F.3d 703 (7th Cir. 2003) ......................................................17

*Novell, Inc.* v. *Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) ..................................................10

*OJ Com., LLC* v. *KidKraft, Inc.*,
　34 F.4th 1232 (11th Cir. 2022) ...........................................................10

*OV Loop, Inc.* v. *Mastercard Inc.*,
　No. 7:23-cv-1773 (S.D.N.Y.) ..................................................................3

*Pac. Bell Tel. Co.* v. *linkLine Commc'ns, Inc.*,
　555 U.S. 438 (2009)....................................................................9, 11

*Paddock Pubs., Inc.* v. *Chi. Trib. Co.*,
　103 F.3d 42 (7th Cir. 1996) ...............................................................13

*PSW, Inc.* v. *VISA U.S.A., Inc.*,
　2006 WL 519670 (D.R.I. 2006)..........................................................17

*FTC* v. *Qualcomm Inc.*,
　969 F.3d 974 (9th Cir. 2020) ...............................................................10

*Reilly* v. *Apple Inc.*,
　578 F. Supp. 3d 1098 (N.D. Cal. 2022) ................................................19

*Reveal Chat Holdco, LLC* v. *Facebook, Inc.*,
　471 F. Supp. 3d 981 (N.D. Cal. 2020) ...................................................11

*SMS Sys. Maint. Servs., Inc.* v. *Digit. Equip. Corp.*,
　188 F.3d 11 (1st Cir. 1999).................................................................20

*Spectrum Sports, Inc.* v. *McQuillan*,
　506 U.S. 447 (1993).............................................................................8

*Springfield Terminal Ry. Co.* v. *Canadian Pac. Ltd.*,
　133 F.3d 103 (1st Cir. 1997).................................................................19

*St. Luke's Hosp.* v. *ProMedica Health Sys., Inc.*,
　8 F.4th 479 (6th Cir. 2021) ..................................................................11

*Thompson* v. *Metro. Multi-List, Inc.*,
　1990 WL 145590 (N.D. Ga. June 28, 1990) .........................................13

*TKO Energy Servs., LLC* v. *M-I, LLC*
　539 F. App'x 866 (10th Cir. 2013) .......................................................12

*Town of Concord* v. *Bos. Edison Co.*,
　915 F.2d 17 (1st Cir. 1990) (Breyer, J.)................................................16

*Vázquez-Ramos* v. *Triple-S Salud, Inc.*,
　55 F.4th 286 (1st Cir. 2022)..................................................................8

*Verizon New England, Inc.* v. *Me. Pub. Utilities Comm'n*,
 509 F.3d 1 (1st Cir. 2007) ..................................................................12

*U.S.* v. *Visa Inc.*,
 No. 3:20-cv-07810 (N.D. Cal. Nov. 5, 2020) .......................................18

*U.S.* v. *Visa U.S.A., Inc.*,
 163 F. Supp. 2d 322 (S.D.N.Y. 2001).................................................18

*U.S.* v. *Visa, U.S.A., Inc.*,
 344 F.3d 229 (2d Cir. 2003)................................................................17

*Xerox Corp.* v. *Media Sciences, Inc.*,
 660 F. Supp. 2d 535 (S.D.N.Y. 2009).................................................20

*Yagoozon, Inc.* v. *Kids Fly Safe*,
 2014 WL 3109797 (D.R.I. July 8, 2014) ...............................................9

**Statutes**

28 U.S.C. § 1404(a) ................................................................................3

15 U.S.C. § 1.................................................................................17, 18

15 U.S.C. § 2............................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................4

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ......................... *passim*

## PRELIMINARY STATEMENT

Despite its length and technical jargon, OV Loop's Amended Complaint fails to correct the fatal defects of the original Complaint and fails to state a claim for a few simple reasons. Although OV Loop claims that Mastercard refused to deal with OV Loop for anticompetitive reasons, it fails to allege any actual refusal to deal, much less an anticompetitive one. OV Loop also claims that Mastercard denied it access to a purported "essential facility"—Mastercard's "tokenization" services—but admits that other companies are capable of providing such services and asserts that the whole point of OV Loop is to render Mastercard irrelevant anyway. And, while all of OV Loop's claims depend on Mastercard having a monopoly, or being dangerously close to acquiring one, OV Loop admits that Mastercard competes with three other payment card networks, one of which (Visa) has a market share that is twice Mastercard's. In the end, OV Loop's gripe is that Mastercard has not given OV Loop as much help as OV Loop wanted to build a business that would, supposedly, one day overtake Mastercard. That is not an antitrust violation. The Amended Complaint should be dismissed.

OV Loop allegedly aims to emulate companies in China and Brazil by creating a "super-app platform" with a universal mobile wallet that will not run on traditional payment card rails. Its alleged plan is to "disintermediate" Mastercard and "eliminate[] entities involved in the digital card network processing chain," including Mastercard. Am. Compl., Doc. No. 48 at ¶¶ 87, 88. But OV Loop insists that it cannot realize this plan to take down Mastercard unless it has Mastercard's help, alleging that it needs access to Mastercard Digital Enablement Service ("MDES") tokens—a technology that Mastercard developed to enhance the security of digital payments. Mastercard, whose reputation depends in part on the security of its payment technology, makes MDES tokens available to companies that meet its security and certification requirements, such as Apple, Google, and Samsung. It does not make tokens available to companies who do not

meet the requirements. OV Loop claims that Mastercard is violating the antitrust laws because Mastercard has not, to date, certified OV Loop.

These allegations do not come close to stating an antitrust violation. The Supreme Court has emphasized that even a monopolist—which Mastercard is not—has discretion to decide with which parties it will or will not deal, except in extremely limited circumstances. *Verizon Commc'ns* v. *Law Offices of Curtis* V. *Trinko*, *LLP*, 540 U.S. 398, 407–408 (2004). The Amended Complaint makes plain that such circumstances are not present here. Among other things, OV Loop does not and cannot allege that Mastercard terminated a prior voluntary course of dealing with it—a key element of "refusal to deal" cases. To the contrary, the Amended Complaint admits that Mastercard has never previously provided tokens to OV Loop. Doc. No. 48 at ¶ 112.

Moreover, OV Loop's Amended Complaint now admits a fact that OV Loop omitted from in its initial Complaint: OV Loop signed an agreement with Visa in 2019 that has "provided OV Loop a path to VTS [tokenization] certification." *Id*. at ¶¶ 162–63. The law is crystal clear that an "essential facilities" claim such as OV Loop's must be rejected when the plaintiff can obtain access to the same type of "facility" from another company in the same alleged market—especially a company like Visa, which OV Loop admits is significantly larger than Mastercard. *See id*. at ¶ 127. The idea that OV Loop might profit from *also* accessing Mastercard tokens does not show that OV Loop has been excluded from competing. Mastercard is not aware of any case, from any court, that finds a claim under § 2 of the Sherman Act to be cognizable in these circumstances.

In any event, OV Loop fails to allege facts that would satisfy even the threshold requirement of a Section 2 monopolization claim—namely, that Mastercard is a monopolist. To the contrary, OV Loop acknowledges that Mastercard competes with at least three other card networks—Visa, American Express and Discover. *Id*. It claims that Visa's market share is roughly

twice the size of Mastercard's, and that Mastercard's share hovers around 25 percent to 27 percent. *Id.* at ¶ 128 & n.3. That is far too low, as a matter of black-letter antitrust law, to support a monopolization (or attempted monopolization) claim.

Given that OV Loop's Complaint falls so short of the mark, in so many ways, it would be natural to wonder what prompted its filing. While OV Loop fails to disclose it in the Amended Complaint, the answer is obvious: In March of last year, OV Loop sued Mastercard for patent infringement in the Southern District of New York, making very similar allegations to those it makes here. *OV Loop, Inc.* v. *Mastercard Inc.*, No. 7:23-cv-1773 (S.D.N.Y.) (the "New York Case"); *see* Michael Decl. Exh. 1, Doc. No. 32-1. OV Loop even characterized that case as presenting "a classic case of Sherman Section II refusal to deal," Michael Decl. Exh. 3, Doc. No. 32-3 at 18, though OV Loop chose not to assert any antitrust claims in that case.[1]

The New York Case remains pending, but has been stayed pending resolution of two *inter partes* review petitions filed by Mastercard. *See* Michael Decl. Exh. 5, Doc. No. 32-5 at 16. In granting the stay over OV Loop's objections, the New York court rejected OV Loop's claim to be a direct competitor to Mastercard that would suffer prejudice due to Mastercard's supposed "refusal to deal." *Id.* at 11–15. The New York court found, among other things, that OV Loop "does not have a market-ready product today," and that Mastercard competes "in an overall larger market" than OV Loop has alleged. *Id.* at 12. The court further noted that OV Loop's "argument that it needed Mastercard's assistance to market its product cuts against its contention that Mastercard is a direct competitor." *Id.* at 14 n.6. These findings undermine OV Loop's antitrust

---

[1] References to "Michael Decl." herein refer to the Declaration of William Michael, dated April 26, 2024, filed in connection with Mastercard's motion to transfer, pursuant to 28 U.S.C. § 1404(a). Doc. No. 32. If the Court grants Mastercard's motion to transfer and transfers this case to the Southern District of New York, it need not decide this motion to dismiss.

claims here, which depend on the idea that Mastercard and OV Loop compete in a narrow market and that OV Loop is suffering competitive harm from Mastercard's conduct. Thus, apparently unsatisfied with the progress of its prior case against Mastercard and unhappy with how its "refusal to deal" story fared before another federal judge, OV Loop filed the present case here.

Perhaps by suing in multiple forums, and repackaging its allegations with different labels, OV Loop hopes to gain some tactical leverage or to circumvent the stay that the New York court has entered. Whatever its stratagems, this Court need not and should not serve as a vehicle for them. For all the reasons set forth herein, OV Loop's Amended Complaint should be dismissed.

## **BACKGROUND**

The following background facts are drawn from the allegations in the Amended Complaint and assumed to be true solely for the purposes of this motion, as required under Rule 12(b)(6).

"Mastercard is one of the two leading payment card networks in the United States," with Visa being "the other predominant network." Doc. No. 48 at ¶ 27. At least two other competing card networks operate in the United States—American Express and Discover. *Id.* at ¶ 127. "Measured by card network purchase volume, Mastercard's market share was 27.41% in 2022," or 25.5%, depending on the source. *Id.* at ¶ 128 & n.3. OV Loop alleges that Mastercard and Visa cumulatively "control approximately 80% of the market." *Id.* at ¶ 27. Given the allegation that Mastercard's card network purchase volume share is 25 to 27%, OV Loop implicitly alleges that Visa's market share is 53 to 55%—meaning that Visa is, according to OV Loop's allegations, about twice as large as Mastercard. *See id.* at ¶ 128 & n.3

OV Loop was founded "in 2018 to create a unified commerce platform with 'super-app' capabilities to enable payments, rewards, and engagement across devices and channels," *id.* at ¶ 90, and it has "approximately 30 employees," *id.* at ¶ 95. It purports to be poised to capitalize on a $10 *trillion* opportunity that Apple, Google, Samsung and others have chosen not to pursue. *Id.* at

¶¶ 76, 107. In China and Brazil, super-apps using alternative payment systems that do not rely on traditional payment card services have been developed. *Id.* at ¶ 172. Unlike Apple Pay, Google Pay and Samsung Wallet, which rely on established payment systems for their mobile wallets, *id.* at ¶ 248, OV Loop aims to become a super-app that disintermediates—*i.e.*, renders irrelevant—Mastercard from financial transactions executed through mobile wallets. *Id.* at ¶¶ 87, 88.

OV Loop now sues Mastercard for allegedly declining to help OV Loop execute its plan to eliminate Mastercard from "the digital card network processing chain," *id.* at ¶ 87, complaining that Mastercard has refused OV Loop access to MDES tokens, *id.* at ¶ 112. When a credit card is loaded into a mobile wallet, the primary card number is replaced with a digital "token" to protect the primary card number during transactions. *Id.* at ¶ 30. OV Loop alleges that, "[t]o access Mastercard . . . tokens, a mobile wallet must be certified and licensed" by Mastercard. *Id.* at ¶ 73.

OV Loop asserts that it "has satisfied all of Mastercard's MDES requirements but has not been granted access to Mastercard's tokens." *Id.* at ¶ 98. Tellingly, however, OV Loop never alleges that Mastercard has found that OV Loop satisfies its certification requirements or that Mastercard has *rejected* an application for certification by OV Loop. The paragraphs of the Amended Complaint asserting the sequence of events between "OV Loop and Mastercard," *id.* at ¶¶ 99–113, can be summarized as follows: OV Loop approached Mastercard about certification in 2018; between 2018 and 2022 there were "years of discussions, demonstrations, and presentations"; as of the filing of the Amended Complaint Mastercard has not granted OV Loop MDES certification; and, although Mastercard also *has not denied* OV Loop certification, OV Loop is convinced that Mastercard is dragging its feet.

OV Loop asserts, in conclusory fashion, that its "solution is just as secure as Samsung Pay, Apple Pay, Google Pay, and Garmin Pay," *id.* at ¶ 165, without alleging what Mastercard's security

requirements are or how OV Loop purports to meet them. Moreover, OV Loop acknowledges that its product uses an entirely different (and outdated) technology—called Magnetic Secured Transmission ("MST")—than Apple, Google or Garmin, to communicate with point-of-sale payment terminals. *Id.* ¶¶ 157, 167. It alleges that Samsung used MST for the "original Samsung Pay" "at launch," roughly a decade ago, *id.* at ¶ 167, but does not and cannot dispute that Samsung recently discontinued the use of MST. OV Loop alleges that it is currently "the only . . . wallet and wallet accessories provider offering MST devices in the United States." *Id.* at ¶ 157. Further, OV Loop alleges that it would put Mastercard tokens on a "key fob" device, hardware that is different from what any other company makes or has ever been certified by Mastercard for use with MDES. *See id.* at ¶¶ 95, 158.

Despite acknowledging that there are at least three other major payment networks—Visa, American Express, and Discover—in the United States, *see id.* at ¶ 127, OV Loop has singled out Mastercard in this lawsuit. OV Loop does not allege that it has tried to obtain, or succeeded in obtaining, access to token services offered by American Express or Discover. As to Visa, it alleges that in July 2019, it signed an agreement with Visa that "provided OV Loop a path to VTS certification." *Id.* at ¶¶ 162–63. OV Loop does not allege that, nearly five years later, this "path" has led to actual Visa certification. *See id.*

Despite apparently receiving any necessary cooperation from Visa—a company that OV Loop describes as being more than twice as large as Mastercard—OV Loop has sued Mastercard for allegedly being a monopolist that is thwarting OV Loop's entry to the market. *Id.* at ¶ 127. It asserts all of its claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, for monopolization or attempted monopolization, based on two duplicative theories of anticompetitive conduct—refusal to deal and denial of an "essential facility." And it purports to define two relevant markets in

which Mastercard supposedly has monopoly power: (1) "Consumer-Merchant Mobile Wallet Contactless Payments Network Processing Services," and (2) "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards." *Id.* at ¶¶ 114–148.

## LEGAL STANDARD

To survive dismissal, "the complaint must allege 'a plausible entitlement to relief'" as a matter of law. *Fitzgerald* v. *Harris*, 549 F.3d 46, 52 (1st Cir. 2008) (internal quotation omitted). Although for "purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" the complaint should be dismissed. *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (quoting *SEC* v. *Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## ARGUMENT

Counts I, III, and V of the Complaint allege monopolization under Section 2 of the Sherman Act. "The elements of monopolization are '(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Diaz Aviation Corp.* v. *Airport Aviation Servs., Inc.*, 716 F.3d 256, 265 (1st Cir. 2013) (quoting *United States* v. *Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). Counts II, IV, and VI allege attempted monopolization under Section 2 of the Sherman Act. "The elements of attempted monopolization are '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Id.* (quoting *Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447, 456 (1993)).

Both actual and attempted monopolization require the allegation of "facts that plausibly delineate a relevant market." *Vázquez-Ramos* v. *Triple-S Salud, Inc.*, 55 F.4th 286, 297 (1st Cir. 2022). Actual monopolization claims require the allegation of facts showing that the defendant has monopoly power in the relevant market. *See Grinnell*, 384 U.S. at 570-71. Attempted monopolization claims require allegations showing that the defendant's conduct created a "dangerous probability" of (and thus came very close to) achieving such power. *Spectrum Sports*, 506 U.S. at 456. Anticompetitive conduct is required in both actual monopolization and attempted monopolization cases. *Diaz Aviation*, 716 F.3d at 256. If the plaintiff fails to plead anticompetitive conduct for actual monopolization purposes, it also fails to plead it for attempted monopolization purposes. PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 806a (4th ed. 2023) ("AREEDA & HOVENKAMP").

## I.     OV LOOP FAILS TO ALLEGE AN ACTIONABLE REFUSAL TO DEAL.

OV Loop fails to allege any actionable anticompetitive conduct. All of OV Loop's claims rest upon a purported refusal to deal or, what amounts to the same thing so far as OV Loop's pleading is concerned, the purported withholding of an "essential facility" by Mastercard. But OV Loop has not alleged any facts establishing that Mastercard actually refused to deal with OV Loop—as opposed to not dealing as quickly as OV Loop wanted or on the terms that OV Loop preferred. Nor has OV Loop alleged any of the facts necessary to fit within the very narrow exception to the rule that even an alleged monopolist has no duty to deal with its competitors or would-be competitors. The "essential facilities" label does not change the conclusion.

### A.     OV Loop Fails to Allege Facts Establishing the "*Aspen Skiing* Exception" to the Rule of No Duty to Deal.

The Amended Complaint nowhere alleges facts showing that Mastercard refused to supply OV Loop with access to its MDES tokenization services. *See supra* pp. 5–6. Rather, the

allegations suggest, at most, that Mastercard has not agreed to "fast track" OV Loop's request for access, Doc. No. 48 at ¶ 102, or to grant access based on OV Loop's own belief that it "is just as secure as certified wallets," *id.* at ¶ 213, as opposed to Mastercard's actual security evaluation and certification process. *See also id.* at ¶ 110 ("In response, Mastercard strung OV Loop along, through at least 2022, by saying the right things—it was excited about OV Loop and looking forward to working together—*without ever outright denying OV Loop*." (emphasis added)). Declining to deal with a third-party on its own preferred terms or timetable is not a "refusal" to deal within the meaning of the law. *See Pac. Bell Tel. Co.* v. *linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009); *Aerotec Int'l, Inc.* v. *Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016).

Even assuming that OV Loop had pled a refusal to deal, that would not violate the antitrust laws without more. And here, the required "more" is missing. The Supreme Court has held: "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Trinko*, 540 U.S. at 408 (quoting *U.S.* v. *Colgate & Co.*, 250 U.S. 300, 307 (1919)). The First Circuit has likewise held: "A manufacturer generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Evergreen Partnering Grp., Inc.* v. *Pactiv Corp.*, 720 F.3d 33, 43 (1st Cir. 2013) (cleaned up). Even a monopolist (which Mastercard is not) generally has no duty to aid its competitors or to deal with any particular third party. *See Trinko*, 540 U.S. at 408; *linkLine*, 555 U.S. at 448 (2009) (except in "rare" circumstances, a unilateral refusal to deal does not give rise to Section 2 liability); *Yagoozon, Inc.* v. *Kids Fly Safe*, 2014 WL 3109797, at *7 (D.R.I. July 8, 2014) ("Even a monopolist generally may refuse to deal or refuse to sell a unique product for any reason.").

In *Trinko*, the Supreme Court left open a narrow exception to this rule. 540 U.S. at 398.

That exception is embodied by a prior case, *Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985), in which the defendant company owned three out of four ski mountains in Aspen, and discontinued a longstanding joint ticketing arrangement with a direct competitor— the company that owned the fourth mountain. *Id.* at 589–94. The Supreme Court affirmed Section 2 liability on the narrow facts of that case that, finding particular significance in the fact that the defendant had terminated a prior, voluntary course of dealing with the plaintiff. *Id.* at 605–11; *see Trinko*, 540 U.S. at 409. While *Trinko* did not overrule *Aspen Skiing*, it described that case as being "at or near the outer boundary of § 2 liability." 540 U.S. at 409. Following *Trinko*, courts have consistently rejected unilateral refusal to deal claims when the facts do not closely mirror *Aspen Skiing*.[2]

The facts alleged by OV Loop do not mirror *Aspen Skiing*. OV Loop makes no allegation that Mastercard previously engaged in a voluntary and profitable course of dealing with OV Loop as a competitor, and discontinued that course of dealing for predatory reasons. To the contrary, OV Loop alleges that Mastercard *never* previously provided the MDES tokenization services OV Loop sought. That alone is fatal to its refusal to deal claims.[3]

---

[2] *See, e.g.*, *OJ Com., LLC* v. *KidKraft, Inc.*, 34 F.4th 1232, 1245 (11th Cir. 2022) (refusal to deal claim not cognizable when "facts [] differ materially from those presented in *Aspen Skiing*"); *Novell, Inc.* v. *Microsoft Corp.*, 731 F.3d 1064, 1074–75 (10th Cir. 2013) (for *Aspen Skiing* exception to apply, "there must be a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival" and "the monopolist's discontinuation of the preexisting course of dealing must suggest[] a willingness to forsake short-term profits to achieve an anti-competitive end." (cleaned up)); *FTC* v. *Qualcomm Inc.*, 969 F.3d 974, 993–94 (9th Cir. 2020) (refusal to deal claim requires that defendants unilaterally terminate "a voluntary and profitable course of dealing," where "the only conceivable rationale or purpose is 'to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition'" (cleaned up)); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (requiring allegations "that defendants terminated any prior course of dealing" as "the sole exception to the broad right of a firm to refuse to deal with its competitors").

[3] *See, e.g.*, *New York* v. *Meta Platforms, Inc.*, 66 F.4th 288, 305 (D.C. Cir. 2023) (to "fit itself within [the *Aspen Skiing*] exception, a plaintiff must allege that, among other things, before the

OV Loop's self-serving assertion that "it would benefit Mastercard to provide OV Loop with MDES access," Doc. No. 48 at ¶ 235, is not a substitute for allegations of a prior voluntary course of dealing with a rival. The crux of *Aspen Skiing* was that the defendant had "cease[ed] participation in a cooperative venture" with a direct competitor. *Trinko*, 540 U.S. at 409. This was significant because "[t]he unilateral termination of a voluntary *(and thus presumably profitable)* course of dealing suggested a willingness to forsake short-term profits to achieve an anticompetitive end." *Id.* If it were enough for a plaintiff simply to assert that *the plaintiff itself* believes the defendant would have profited from dealing with it, the exception would swallow the rule that firms have discretion to choose with whom they will deal.[4]

Finally, unlike in *Aspen Skiing*, OV Loop does not and cannot allege that "plaintiff and defendant were the only participants in the market," which is another factor that dooms any effort to rely on the *Aspen Skiing* exception. *See Arcesium, LLC* v. *Advent Software, Inc.*, 2021 WL 1225446, at *6 (S.D.N.Y. Mar. 31, 2021). OV Loop specifically alleges that Visa—a much larger firm—competes in the alleged market. Doc. No. 48 at ¶ 131. And despite the attempted obfuscation in the Amended Complaint, it is clear that American Express and Discover compete with Mastercard at the network level, *see id.* at ¶ 127, and that OV Loop has to compete against

---

defendant refused its competitors access the defendant 'voluntarily engaged in a course of dealing with its rivals, or would have done so absent statutory compulsion'") (cleaned up)); *St. Luke's Hosp.* v. *ProMedica Health Sys., Inc.*, 8 F.4th 479, 486–87 (6th Cir. 2021) (holding that if defendant did not terminate "a voluntary course of dealing with its rival," "the antitrust laws do not apply"); *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135 (2d Cir. 2014) (affirming dismissal of refusal to deal claim because plaintiff did not allege that defendant terminated prior course of dealing).

[4] Further, unlike in *Aspen Skiing*, Mastercard has not "turned down a proposal to sell at its own retail price." 540 U.S. at 409. Mastercard is not alleged to be withholding from OV Loop the right to purchase some commodity it sells to the general public at retail. *See Covad Commc'ns Co.* v. *BellSouth Corp.,* 374 F.3d 1044, 1048 (11th Cir. 2004) (rejecting refusal to deal claim where there was no "failure to sell *otherwise publicly marketed services*"); *Reveal Chat Holdco, LLC* v. *Facebook, Inc.*, 471 F. Supp. 3d 981, 1002 (N.D. Cal. 2020). *See also linkLine*, 555 U.S. at 450.

other mobile wallet operators, *see id.* at ¶ 183.

In short, OV Loop's allegations do not remotely resemble those in *Aspen Skiing*, and thus do not fit within the narrow exception to the rule that unilateral refusals to deal are lawful.

### B. The "Essential Facilities" Label Does Not Save OV Loop's Claims.

Counts III and IV of the Complaint assert monopolization and attempted monopolization through "denial of access to an essential facility" as to the alleged "First Relevant Market." *See* Doc No. 48 at ¶¶ 227–37, 238–42. These are just a repackaging of OV Loop's refusal to deal claims under a different label, and likewise fail to plead any antitrust violation.

Whether a standalone "essential facilities" claim remains viable is subject to considerable doubt. In *Trinko*, the Supreme Court noted that it has "never recognized such a doctrine." 540 U.S. at 410–11. The courts of appeal are divided on whether the doctrine survives *Trinko* and *linkLine*. *See Marion HealthCare, LLC* v. *S. Ill. Hosp. Servs.*, 41 F.4th 787, 792 (7th Cir. 2022) ("the Supreme Court greatly curtailed the scope of the essential-facilities doctrine" in *linkLine*); *Four Corners Nephrology Assocs., P.C.* v. *Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1223 (10th Cir. 2009) ("'[E]ssential facility' is just an epithet describing the monopolist's situation: the monopolist possesses something the plaintiff wants. It is not an independent tool of analysis; it is only a label . . . ."); *TKO Energy Servs., LLC* v. *M-I LLC*, 539 F. App'x 866, 872 (10th Cir. 2013) (similar). For its part, the First Circuit has cast doubt on the doctrine by noting that "making a monopolist share what used to be called 'essential facilities' can promote competition; but it can also retard investment, handicap competition detrimentally, and discourage alternative means of achieving the same result that could conceivably enhance competition in the long run." *Verizon New England, Inc.* v. *Me. Pub. Utilities Comm'n*, 509 F.3d 1, 9 (1st Cir. 2007).

Even assuming that some version of the essential facilities doctrine survives, OV Loop has not pled a violation. Courts that permit essential facilities claims sharply limit them to the

following circumstances: "(1) that [defendant] is a monopolist in control of an essential facility, (2) that [plaintiff], as [defendant's] competitor, is unable reasonably or practically to duplicate the facility, (3) that [defendant] has refused to provide [plaintiff] access to the facility, and (4) that it is feasible for [defendant] to provide such access." *Aerotec,* 836 F.3d at 1185. OV Loop's claim does not meet these requirements.

*First*, OV Loop has failed to plead that Mastercard is a monopolist in a properly pled relevant market. *See infra* Section II. That alone is fatal to OV Loop's essential facilities claim. *See* AREEDA & HOVENKAMP ¶ 773c ("The minimum condition that must be satisfied before nondealing could have the proscribed effect is that the defendant be a monopolist.").

*Second*, OV Loop fails to plead that access to Mastercard tokens is "essential" because it admits that it is able to obtain tokenization services from Visa, Doc. No. 48 at ¶ 163, which OV Loop alleges has a much larger market share than Mastercard, *id.* at ¶ 128 & n.3. *See Aerotec*, 836 F.3d at 1185 (finding that defendant did not control an essential facility where plaintiff had obtained access to the same parts that defendant allegedly controlled from other suppliers); *Eatoni Ergonomics, Inc.* v. *Research in Motion Corp.*, 486 F. App'x 186, 190–91 (2d Cir. 2012) (affirming dismissal of essential facilities claim because, even assuming defendant was a monopolist and access to its facilities would have been most profitable or convenient to plaintiff, there were other companies capable of providing the same service); *Thompson* v. *Metro. Multi-List, Inc.*, 1990 WL 145590, at *4–5 (N.D. Ga. June 28, 1990), *aff'd in part*, 934 F.2d 1566 (11th Cir. 1991) (multi-listing service for real estate not an essential facility where another company offered same service). By definition, if there is more than one "facility" in the market, none is essential. *Paddock Pubs., Inc.* v. *Chi. Trib. Co.*, 103 F.3d 42, 44–45 (7th Cir. 1996) ("the existence of three competing facilities. . . means that none is an 'essential facility'").

OV Loop attempts to dodge the fatal implication for its essential facilities claim of its access to Visa tokenization by asserting that "VTS [Visa] is not a substitute for MDES, as MDES is the only infrastructure for accessing the tokens for Mastercard[]" and hence that "MDES is an essential facility." Doc. No. 48 at ¶ 180. This assertion misconceives essential facilities law. The question is not whether Visa tokenization can be a means of accessing Mastercard-branded cards, but whether Mastercard branded cards have a monopoly position in the alleged relevant market for "Consumer-Merchant Mobile Wallet Contactless Payments Network Processing Services."[5] *See* AREEDA & HOVENKAMP ¶ 773c ("[B]y 'monopolist' we do not mean that the defendant is sole controller of the alleged essential facility. Rather, the alleged facility must be shown to dominate a properly defined relevant market."). Since Mastercard's share of the relevant market is well below 30% and there is a much larger competitor in the market, *see infra* Section II.A, access to its "facility" simply is not "essential" under Section 2 of the Sherman Act.

OV Loop cannot save its essential facilities argument by asserting that MDES is an essential facility because it "is necessary for any mobile wallet to gain acceptance among United States consumers." Doc. No. 48 at ¶ 186. First, this allegation is entirely conclusory, unsupported by any factual allegations, and defies common sense. *Iqbal*, 556 U.S. at 665 (on a 12(b)(6) motion, court does not have to accept as true conclusory assertions); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007) (same). OV Loop fails to allege any facts showing that, having obtained access to Visa's tokens and its approximately 53%–55% market share, OV Loop also needs access to Mastercard tokens to offer a viable product. Moreover, there is no reason to think that in order to compete in the marketplace, a mobile wallet operator must have access to Visa and Mastercard

---

[5] OV Loop asserts essential facilities claims only as to the "First Relevant Market." *See* Doc. No. 48 at ¶¶ 227–242.

tokens *from Day 1*. And OV Loop's allegations provide no reason to infer that OV Loop is being blocked from entering the market because it lacks access to Mastercard tokens, even though it has allegedly had access to Visa tokens *for the past 5 years*.

Further, even if OV Loop had plausibly alleged that access to MDES were essential to OV Loop's ability to compete in the market, that would still not make MDES an essential facility within the meaning of Section 2 of the Sherman Act. Such an argument was rejected in *Blue Cross & Blue Shield United of Wis.* v. *Marshfield Clinic*, 65 F.3d 1406 (7th Cir. 1995). There, an insurer and its health maintenance organization ("HMO") alleged that a large clinic (that owned an HMO subsidiary competing with the plaintiff) anticompetitively excluded the plaintiff from the relevant market by denying the plaintiff access to defendant's clinic. *Id*. at 1408–09. The Seventh Circuit rejected the argument that the defendant's "market share [could] be levered up to 100 percent," from less than 50%, for essential facilities purposes by the allegation that, without the defendant's clinic in its portfolio, no one would want the plaintiff's product. *Id.* at 1413. The court explained that "the suggestion that the price of being 'best' is to be brought under the regulatory aegis of antitrust law and stripped of your power to decide whom to do business with does not identify an interest that the antitrust laws protect." *Id.* In short, even if access to defendant's clinic was valuable for making plaintiff's services attractive to customers, that did not make it an essential facility within the meaning of the antitrust laws.

So too here. Even if access to Mastercard's MDES were valuable for OV Loop to provide an *attractive* mobile wallet, that would not make Mastercard an essential facility. Mastercard is not a monopolist, it does not control the market, and OV Loop has admitted that it obtained access to the market through cooperation with another competitor twice Mastercard's size.

Finally, there is a fatal contradiction in OV Loop's Complaint. On the one hand, it claims

that Mastercard's tokenization service is "essential." *See* Doc. No. 48 at ¶ 180. On the other, it purports to be building a product that has no need for Mastercard. *See id.* at ¶¶ 87–88. By OV Loop's own allegations, access to Mastercard is not essential to its participation in the alleged market, which it describes as a "$10 Trillion" opportunity *without Mastercard. Id.* at ¶¶ 76–77.

## II. OV LOOP FAILS TO ALLEGE MONOPOLY POWER.

### A. OV Loop Fails to Allege Facts Showing that Mastercard Has Monopoly Power in the First Alleged Relevant Market.

The first alleged relevant market is for "Consumer-Merchant Mobile Wallet Contactless Payments Network Processing Services." *Id.* ¶ 114. Even assuming *arguendo* that this were a proper antitrust relevant market, which it is not,[6] OV Loop fails to allege facts showing that Mastercard has monopoly power. OV Loop asserts that Mastercard possesses monopoly power based on, among other things, "Mastercard's market share." *Id.* ¶ 136. But a monopolization claim requires a market share of at least 70%. *See Town of Concord* v. *Bos. Edison Co.*, 915 F.2d 17, 30 (1st Cir. 1990) (Breyer, J.); *Benjamin* v. *Aroostook Med. Ctr.*, 937 F. Supp. 957, 966 (D. Me. 1996). To the extent that OV Loop identifies Mastercard's market share at all, it alleges that Mastercard's share of card network purchase volume is between 25.5% and 27.41%. Doc. No. 48 at ¶ 128 & n.3.[7] That is nowhere near enough.

---

[6] OV Loop's alleged market definition is improperly gerrymandered: It includes no other mobile wallets even though it admits to competing against them, and excludes alternative forms of payment that are obviously interchangeable. *See* Doc. No. 48 at ¶¶ 119–125. OV Loop purports to rely on "Mastercard's SEC filing" as establishing "C-M Mobile Payment Services" as a "separate product market," *id.* ¶ 116, but the New York court pointed out, when OV Loop relied on the same sources: "OV Loop omits other language from those SEC filings that describe Mastercard as 'a technology company in the global payments industry'" that "operate[s] a multi-rail payments network that provides choice and flexibility for consumers, merchants and [its] customers" and it competes "in an overall larger market." Doc. No. 32-5, at 12.

[7] OV Loop does not actually allege Mastercard's market share in the market that OV Loop purports to define, and instead holds these numbers out as apparent proxies. That is yet another indication that OV Loop's "First Relevant Market" is not a real market at all.

Further, OV Loop's Amended Complaint contradicts any inference that Mastercard has a monopoly by alleging that the market is "dominated" by *both* Mastercard *and* Visa. *Id.* at ¶ 131. Two firms cannot share a monopoly under Section 2. *See Midwest Gas Servs., Inc.* v. *Ind. Gas Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] § 2 claim can only accuse one firm of being a monopolist."); *City of Moundridge* v. *Exxon Mobil Corp.*, 471 F.Supp.2d 20, 42 (D.D.C. 2007) ("Section 2 liability requires actual or attempted monopolization by one defendant."); AREEDA & HOVENKAMP ¶ 810g ("[C]ourts and the Federal Trade Commission have universally rejected claims that § 2 condemns 'shared' monopoly.").

Applying this rule, a court in this Circuit granted a motion to dismiss Sherman Act § 2 claims *against Visa and Mastercard*, based on a theory of joint "dominance." *PSW, Inc.* v. *VISA U.S.A., Inc.*, 2006 WL 519670, at *11–12 (D.R.I. 2006). The court observed that, at that time, "Visa enjoy[ed] nearly 60%" of the relevant market and that MasterCard ha[d] 33% to 36% of the relevant market." *Id.* at *12 It held: "These figures simply do not constitute monopoly power." *Id.* Another court reached the same result, dismissing monopolization claims against Mastercard because its alleged market share of 29% was insufficient as a matter of law to constitute monopoly power, and held that a joint monopolization theory against Visa and Mastercard was unsustainable as a matter of law. *Discover Fin. Servs., Inc.* v. *Visa U.S.A., Inc.*, 2005 WL 8178487, at *1–2 (S.D.N.Y. Nov. 4, 2005). OV Loop here alleges an even *lower* market share for Mastercard.

Notably, the *PSW* court also distinguished prior cases finding that Mastercard and Visa had market power for purposes of Section 1 of the Sherman Act—including the case, *United States* v. *Visa, U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003), that OV Loop cites in its Amended Complaint, Doc. No. 48 at ¶¶ 16, 45–46—as inapposite for purposes of a Section 2 monopolization claim. *Id.*

at \*12 n.3 (citing *Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992)).[8]

OV Loop's assertion that Mastercard's alleged ability to price discriminate and to charge "high" interchange fees establish that "Mastercard maintains independent market power," *id.* at ¶ 148, also falls far short of establishing that Mastercard has *monopoly* power for purpose of Section 2 of the Sherman Act. The case on which OV Loop relies for this assertion, *U.S.* v. *Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 340 (S.D.N.Y. 2001), observed that Mastercard's and Visa's ability to price discriminate *(23 years ago)* showed that they had market power for purposes of Section 1, not that they had monopoly power under Section 2, whether individually or jointly. Moreover, OV Loop's assertion that interchange fees in the United States transactions "are among the highest in the world" and "have been increasing very rapidly," Doc. No. 48 at ¶ 148, points to a chart of interchange fees for multiple payment card networks from *1999-2004*—nearly 20 years ago—and therefore does nothing to show that "Mastercard maintains *independent* market power."

OV Loop's attempted monopolization claims fail for much the same reasons. Courts generally require a market share above 50% to establish a "dangerous probability of success" for attempt claims, and hold that "claims of less than 30% market shares should presumptively be rejected." *M&M Med. Supplies & Serv., Inc.* v. *Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166, 168 (4th Cir. 1992); *see* AREEDA & HOVENKAMP ¶ 807d (collecting cases). The First Circuit, while it has not adopted a numerical cutoff, "give[s] weight" to this "traditional [market share]

---

[8] It is questionable whether a finding that Mastercard had market power in 2001 or 2003 is still of any relevance over twenty years later. For example, the DOJ has recently stated that Mastercard does not have market power in debit card transactions. *See, e.g.*, Compl. ¶ 5, *U.S.* v. *Visa Inc.*, No. 3:20-cv-07810 (N.D. Cal. Nov. 5, 2020) ("Mastercard, Visa's only longstanding rival in online debit services, has a much smaller market share of around 25%. For years, Mastercard has neither gained significant share from Visa nor restrained Visa's monopoly."); *id.* ¶ 26 (describing Mastercard as "around one-third the size of Visa in online debit"). And even if Mastercard still had market power, that would not establish it has *monopoly* power, which is required for OV Loop's Sherman Act § 2 claims. *See Kodak*, 504 U.S. at 481

requirement." *Springfield Terminal Ry. Co.* v. *Canadian Pac. Ltd.*, 133 F.3d 103, 108 (1st Cir. 1997). Mastercard's alleged 25–27% market share, Doc. No. 48 at ¶128 & n.3, with no alleged exceptional circumstances, is thus fatal to OV Loop's attempted monopolization claim.

OV Loop's admission that Visa has a much larger share than Mastercard in the same market is also independently fatal. For an attempted monopolization claim, "[t]he all-important consideration is that the alleged conduct must be reasonably capable of creating a monopoly in the defined market." *Springfield Terminal*, 133 F.3d at 108 (citation omitted). Thus, by OV Loop's own account, for Mastercard to become a monopolist, it would have to displace Visa, which has double Mastercard's share. OV Loop makes no allegations to suggest this is a possibility, much less a dangerous probability.

**B.**     **OV Loop Fails to Allege a Relevant Market for "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards."**

As a fallback, OV Loop alleges a "Second Relevant Market," defined as "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards." *Id.* ¶ 137. OV Loop claims that Mastercard has a monopoly over technology that Mastercard developed to be used with Mastercard cards. If that facile reasoning were enough to define an antitrust market, then every company could be labelled a monopolist, but that is not the law. Rather, there are stringent, and rarely met, requirements to define a "single-brand market." *See, e.g.*, *Green Country Food Mkt. Inc.* v. *Bottling Grp., LLC,* 371 F. 3d 1275, 1283 (10th Cir. 2004) (single-brand markets are allowed only in "rare circumstances"); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019) ("It is an understatement to say that single-brand markets are disfavored. From nearly the inception of modern antitrust law, the Supreme Court has expressed skepticism of single-brand markets[.]"); *Reilly* v. *Apple Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022). The Amended Complaint does not come close to meeting those requirements.

The one circumstance in which single-brand markets may be permitted is where the claim concerns an "aftermarket" in which customers have become "locked in." *See Kodak*, 504 U.S. at 481; *SMS Sys. Maint. Servs., Inc.* v. *Digit. Equip. Corp.*, 188 F.3d 11, 17 (1st Cir. 1999). But a plaintiff alleging a single-brand market on such a theory must allege (and ultimately prove) each of the following: "(1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023).

OV Loop pleads nothing close to what is required. Among other things, it fails to allege: that "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards" is even an "aftermarket"; that any relevant "consumers" are unaware of any "challenged aftermarket restrictions"; that there are "significant information costs" preventing life-cycle pricing; or that there are "significant switching costs" at issue. And, "general market-definition principles" *do* "undermine the proposed single-brand market" because it is evident from OV Loop's allegations, as discussed above and as the court in the New York Case found, that Mastercard competes "in an overall larger market," against competitors such as Visa and others. Doc. No. 32-5 at 12. OV Loop's claims based on the Second Relevant Market should be therefore dismissed. *See, e.g.*, *Maui Jim, Inc.* v. *SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 945–46 (N.D. Ill. 2019); *Xerox Corp.* v. *Media Sciences, Inc.*, 660 F. Supp. 2d 535, 547 (S.D.N.Y. 2009).

## **CONCLUSION**

For the foregoing reasons, and because the Amended Complaint suffers from multiple independent legal defects which cannot be cured by amendment, Mastercard respectfully requests that the Court grant its motion to dismiss the Amended Complaint with prejudice.

Dated: May 31, 2024

Respectfully Submitted,

By: /s/ *Samuel N. Rudman*

**CHOATE, HALL & STEWART LLP**
Samuel N. Rudman (BBO#: 698018)
Danielle Pelot (BBO#: 661499)
Two International Place
Boston, Massachusetts 02110
Tel.: (617) 248-4034
srudman@choate.com
dpelot@choate.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth A. Gallo (*pro hac vice*)
Donna M. Ioffredo *(pro hac vice)*
2001 K Street NW
Washington, D.C. 20006
Tel.: (202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

Andrew C. Finch *(pro hac vice)*
William B. Michael *(pro hac vice)*
Robert J. O'Loughlin *(pro hac vice)*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
afinch@paulweiss.com
wmichael@paulweiss.com
roloughlin@paulweiss.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*

## CERTIFICATE OF SERVICE

I, Samuel N. Rudman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Samuel N. Rudman*
Samuel N. Rudman (BBO#: 698018)