UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OV LOOP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MASTERCARD INCORPORATED, and MASTERCARD INTERNATIONAL INCORPORATED, both Delaware corporations,<br><br>Defendants. | Case No. 1:24-cv-10412-IT<br><br>**Leave to File Granted July 18, 2024** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT...................................................................................................................................3

I.     OV LOOP FAILS TO ALLEGE AN ACTIONABLE REFUSAL TO
    DEAL..................................................................................................................................3

    A.     OV Loop Cannot Escape the Requirement of Showing Termination
         of a Prior Course of Dealing to Establish an Actionable Refusal to
         Deal.........................................................................................................................3

    B.     OV Loop's Assertions about the FTC's Administrative Action Are
         Either an Irrelevant Distraction or Cut Against Its Claims...........................6

    C.     The "Essential Facilities" Label Does Not Save OV Loop's
         Claims. ..................................................................................................................6

II.     OV LOOP FAILS TO ALLEGE MONOPOLY POWER. ....................................7

    A.     OV Loop's Monopolization Claims Are Not Cognizable. ..........................7

    B.     OV Loop's Efforts to Save its "Second Relevant Market" Are
         Unavailing...........................................................................................................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blue Cross & Blue Shield United* v. *Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ....................................................................................................7

*City of Moundridge* v. *Exxon Mobil Corp.*,
   471 F. Supp. 2d 20 (D.D.C. 2007) .............................................................................................9

*Data General Corp.* v. *Grumman Sys. Support Corp.*,
   36 F.3d 1147 (1st Cir. 1994) ......................................................................................................3

*Discover Fin. Servs, Inc.* v. *Visa U.S.A., Inc.*,
   No. 04-cv-7844, 2005 WL 8178487 (S.D.N.Y. Nov. 4, 2005) ..................................................8

*Distance Learning Co.* v. *Maynard*,
   No. 19-cv-03801, 2020 WL 2995529 (N.D. Cal. June 4, 2020) ................................................8

*Evergreen Helicopters, Inc.* v. *Erickson Air-Crane Inc.*,
   No. 09-3059-PA, 2011 WL 285201 (D. Or. Jan. 26, 2011) ...................................................4, 5

*Helicopter Transp. Servs., Inc.* v. *Erickson Air-Crane Inc.*,
   No. 06-3077-PA, 2008 WL 151833 (D. Or. Jan. 14, 2008) ....................................................4, 5

*Int'l Ass'n of Machinists* v. *Verso*,
   80 F. Supp. 3d 247 (D. Me. 2015) .............................................................................................3

*In re Mastercard Inc.*,
   FTC Docket No. C-4795 (May 30, 2023),.................................................................................6

*Midwest Gas Servs, Inc.* v. *Ind. Gas Co.*,
   317 F.3d 703 (7th Cir. 2003) .....................................................................................................9

*Pac. Bell Tel. Co.* v. *linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009) ................................................................................................................3, 4

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
   562 F. Supp. 2d 392 (E.D.N.Y. 2008) ....................................................................................2, 9

*PSW, Inc.* v. *VISA USA, Inc.*,
   No. C.A. 04-347T, 2006 WL 519670 (D.R.I. Feb. 28, 2006) ...................................................8

*FTC* v. *Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) .....................................................................................................5

*Steward Health Care Sys. LLC* v. *Blue Cross & Blue Shield of R.I.*,
    311 F. Supp. 3d 468 (D.R.I. 2018) ............................................................................3, 4

*Verizon Commc'ns* v. *Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).................................................................................1, 3, 4, 6

*FTC* v. *Whole Foods Market, Inc.*,
    548 F.3d 1028 (D.C. Cir. 2008)...............................................................................10

**Statutes**

15 U.S.C. § 1.................................................................................................................9

15 U.S.C. § 2.........................................................................................................*passim*

**Other Authorities**

P<small>HILLIP</small> E. A<small>REEDA</small> & H<small>ERBERT</small> H<small>OVENKAMP</small>, A<small>NTITRUST</small> L<small>AW</small> ¶ 810g
    (4th ed. 2023).....................................................................................................8, 9

**PRELIMINARY STATEMENT**

OV Loop's opposition brief confirms that its Amended Complaint is a misguided effort to escape proceedings it previously initiated in the Southern District of New York, where the court cast considerable doubt on OV Loop's antitrust theories. OV Loop admits that it "is not a payment network," and that its best hope is that it "*could eventually* offer alternative payment rails," *see* Pl.'s Corr. Mem., Doc. No. 67 at 1 (emphasis added), which further demonstrates that the New York court was correct in finding that OV Loop is not a competitor to Mastercard. Defs.' Mem., Doc. No. 55 at 3. For the reasons set forth in Mastercard's Motion to Transfer Venue, Doc. No. 33, this case should be transferred to New York. But if the Court decides to reach this Motion to Dismiss, then the Amended Complaint should be dismissed because OV Loop's allegations fail to establish the essential requirements of a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2: (1) actionable anticompetitive conduct; and (2) monopoly power in the relevant market.

As discussed in Mastercard's moving brief, there are narrow conditions that must be met to state a unilateral refusal to deal claim. Doc. No. 55 at 8–12. Among other things, the plaintiff must allege that the defendant discontinued a prior, profitable course of dealing. OV Loop concedes it has made no such allegation. *See* Doc. No. 67 at 11. Instead, relying on three district court opinions, it contends it does not need to. To the extent those opinions hold that discontinuation of a prior course of dealing is unnecessary, they run contrary to controlling Supreme Court and persuasive Circuit court authority. Regardless, the facts alleged here fit none of the patterns in the "limited exception recognized in *Aspen Skiing*." *Verizon Commc'ns* v. *Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).

OV Loop further attempts to distract from the infirmity of its allegations by drawing attention to a 2023 FTC complaint against Mastercard. But that complaint had nothing to do with the Sherman Act. Rather, it arose under the Durbin Amendment and its implementing regulations,

1

and also involved a different market segment than OV Loop claims at issue here. If anything, the FTC complaint undermines OV Loop's claims because it suggests, correctly and contrary to the Amended Complaint, that Mastercard is *not* the only token service provider for its payment cards.

OV Loop's opposition confirms that its Amended Complaint fails for another, independent reason: OV Loop's own allegations show that Mastercard does not have a monopoly, nor a dangerous probability of acquiring one. OV Loop concedes that Mastercard has no more than a 27.41% market share, faces several competitors, and that Visa has over 130 million more cards in circulation than Mastercard. Am. Compl., Doc. No. 48 at ¶¶ 127–128. OV Loop cannot rebut the overwhelming weight of authority rejecting "shared" monopolization theories like the one it relies on here. By asserting that Mastercard and Visa are both "monopolists" in the same alleged market, OV Loop has pled itself out of a Sherman Act Section 2 claim.

OV Loop's only answer is a 2008 decision from the Eastern District of New York allowing monopolization claims to proceed against Mastercard, even though identical claims were being made against Visa. Doc. No. 67 at 8–10; *see In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 562 F. Supp. 2d 392, 395 (E.D.N.Y. 2008). That decision involved conspiracy claims not at issue here, and to the extent it accepts a shared monopolization theory it runs afoul of what the leading antitrust treatise describes as a "universal" rule rejecting such theories. Doc. No. 55 at 17.

Finally, as to its alternative "single-brand" relevant market—which attempts to plead around the fact that Mastercard faces competition from Visa and others by defining a separate market for Mastercard's own brand of cards—OV Loop ignores the law. Instead of confronting the deficiencies of its Amended Complaint, it discusses the requirements for pleading a "submarket," which is different than a single-brand market and not what OV Loop alleges.

2

OV Loop's Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   OV LOOP FAILS TO ALLEGE AN ACTIONABLE REFUSAL TO DEAL.

#### A.   OV Loop Cannot Escape the Requirement of Showing Termination of a Prior Course of Dealing to Establish an Actionable Refusal to Deal.

Mastercard's moving brief identified the overwhelming weight of authority holding that refusal to deal claims require the plaintiff to establish that the defendant discontinued a prior course of dealing. Doc. No. 55 at 10–11. This includes decisions from the Second, Sixth, Ninth, Tenth, Eleventh, and D.C. Circuits, *id.*, and draws on the seminal Supreme Court's decisions in *Trinko* and *Pac. Bell Tel. Co.* v. *linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009). We are unaware of any post-*Trinko* Circuit-level decision to the contrary, and OV Loop cites none. OV Loop concedes that it does not allege that Mastercard discontinued a prior course of dealing with OV Loop. *See* Doc. No. 67 at 11. It argues instead that a prior course of dealing is not required, relying on three district court opinions. *Id.* at 13–14.[1] There are numerous problems with OV Loop's argument.

*First*, the primary case that OV Loop relies on—*Steward Health Care Sys. LLC* v. *Blue Cross & Blue Shield of R.I.*, 311 F. Supp. 3d 468 (D.R.I. 2018)—must be considered in light of the overwhelming weight of Circuit and district court precedent holding the opposite. *See* Doc. No. 55 at 10 nn.2–3 (collecting cases). The *Steward* court's expansive reading of duty to deal liability under Section 2 of the Sherman Act cannot be reconciled with the Supreme Court's holding in *Trinko* that *Aspen Skiing* was "at or near the outer boundary of § 2 liability" and that a refusal to deal case must "fit within the limited exception recognized in *Aspen Skiing*." 540 U.S. at 409; *see also Int'l Ass'n of Machinists* v. *Verso*, 80 F. Supp. 3d 247, 283 (D. Me. 2015) (finding

---

[1] OV Loop also relies on *Data General Corp.* v. *Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994), which preceded *Trinko* by a decade and rested its holding on *Aspen Skiing* "not being entirely clear." *Id.* at 1183. Any such ambiguities were clarified by *Trinko*. 540 U.S. at 409.

3

*Trinko* not satisfied because there was no prior cooperative venture between plaintiff and defendant). But despite the *Steward* court's anomalous interpretation of *Trinko* and *linkLine*, the very "first category of evidence" cited by the *Steward* court as establishing an anticompetitive refusal to deal was "that Blue Cross terminated a longstanding, presumably profitable course of dealing with Landmark in order to block Steward." 311 F. Supp. 3d at 485.

The facts of *Steward* also involved another aspect of *Aspen Skiing* that is not present in this case. As the Supreme Court noted in *Trinko*, the *Aspen Skiing* defendant "turned down a proposal to sell at its own retail price." 540 U.S. at 409; *see also* Doc. No. 55 at 11 n.4. So too in *Steward*, the plaintiff hospital produced evidence that "that it proposed reimbursement rates for Landmark at a level lower than what Blue Cross was paying other hospitals" based on average rates. 311 F. Supp. 3d at 490. That sort of evidence could support a theory that the defendant was deliberately sacrificing profits to exclude a competitor. Here, OV Loop makes no similar allegations.[2]

*Second*, the other two cases cited by OV Loop (which were related and decided by the same judge)—*Helicopter Transp. Servs., Inc.* v. *Erickson Air-Crane Inc.*, No. 06-3077-PA, 2008 WL 151833 (D. Or. Jan. 14, 2008), and *Evergreen Helicopters, Inc.* v. *Erickson Air-Crane Inc.*, No. 09-3059-PA, 2011 WL 285201 (D. Or. Jan. 26, 2011)—do not help OV Loop's argument. There, the court read *Trinko* as not requiring termination of a prior course of dealing for a refusal to deal claim (and, rather, treating such termination as a form of non-dispositive evidence of whether the defendant intended to exclude competition). *Helicopter Transp. Servs.*, 2008 WL 151833 at *9; *Evergreen Helicopters*, 2011 WL 285201 at *6. The Oregon court declined to follow a prior,

---

[2] OV Loop makes no allegation that it was subject to different security standards compared to other digital wallets. Although OV Loop suggests that it actually met Mastercard's requirements for approval, Doc. No. 67 at 18, its pleading undermines that claim. OV Loop claims it submitted to Mastercard a "third-party laboratory security report," *id.*, but it provides no information about what that report actually says or whether it identified any significant security flaws. *Id.*

4

unpublished Ninth Circuit opinion and other Circuit court opinions that had reached the opposite conclusion. *See Evergreen Helicopters*, 2011 WL 285201 at *6; *see also Helicopter Transp. Servs.*, 2008 WL 151833 at *9 n.10 (declining to follow the Eleventh Circuit). Since then, however, the Ninth Circuit has explained in a published opinion that unilateral termination of "a voluntary and profitable course of dealing" is one of "the required elements for the *Aspen Skiing* exception" to apply. *FTC* v. *Qualcomm Inc.*, 969 F.3d 974, 993–95 (9th Cir. 2020) (cleaned up). The Oregon court's prior decisions are thus irrelevant.[3]

*Finally*, OV Loop does not respond to the authority cited in Mastercard's moving brief to the effect that an *Aspen Skiing* claim depends on a showing that the plaintiff and defendant are the only participants in the market, which is not true here. Doc. No. 55 at 11. At the very least, Visa is a critical player in OV Loop's alleged market. Further, OV Loop now claims that "[e]ither Mastercard or Visa can prevent a universal mobile wallet from succeeding by denying access to its respective tokens; and only one refusal to deal is sufficient to deny consumers their choice of wallet, allowing Mastercard and Visa to maintain their own monopoly." Doc. No. 67 at 2. That assertion is unsupported by the allegations in the Amended Complaint, but more importantly, it is self-defeating. Given that OV Loop is still not certified by Visa, despite supposedly being on a "path" to certification for years, OV Loop has effectively admitted that Mastercard is not the cause of OV Loop's failure to enter the purported market. *See id.* OV Loop still would not be able to do so even if Mastercard granted it token authorization tomorrow.

In sum, even if OV Loop were correct (and it is not) that discontinuation of a prior course of dealing is not strictly required to plead a refusal to deal claim, OV Loop still fails to plead facts

---

[3] Additionally, the Oregon court did find that "a reasonable juror could conclude[] Erickson unilaterally terminated a voluntary course of dealing with Evergreen." *Evergreen Helicopters*, 2011 WL 285201 at *6.

fitting into the "limited exception recognized in *Aspen Skiing*." 540 U.S. at 409.

**B.    OV Loop's Assertions about the FTC's Administrative Action Are Either an Irrelevant Distraction or Cut Against Its Claims.**

OV Loop spends several pages on the FTC's complaint against Mastercard for alleged Durbin Amendment violations and the supposed implications of that complaint for this case. Doc. No. 67 at 14–17. The FTC allegations are a red herring and undermine OV Loop's claims.

*First*, the FTC complaint did not involve the Sherman Act, but instead concerned the implementing regulations of the Durbin Amendment. Those regulations have no bearing on whether OV Loop has stated a claim under Section 2 of the Sherman Act.

*Second*, the FTC complaint was focused on the detokenization of debit transactions for ecommerce and ecommerce wallets, which OV Loop specifically *excludes* from its alleged market definitions. Doc. No. 48 at ¶¶ 114, 125.

*Finally*, to the extent the FTC complaint has any bearing, it further confirms why the complaint should be dismissed. The FTC's order resolving the complaint, which OV Loop does not cite, makes clear that companies other than Mastercard may provide tokenization services, and that "the issuance of standards for Payment Tokens" does not violate the order.[4] This undercuts OV Loop's argument that Mastercard is an essential facility for tokenization services, or that there is something anticompetitive about Mastercard insisting on compliance with its standards.

**C.    The "Essential Facilities" Label Does Not Save OV Loop's Claims.**

As discussed in Mastercard's moving brief, it is doubtful whether a standalone essential facilities claim remains viable after *Trinko*, but assuming it does, OV Loop does not begin to meet its requirements. Doc. No. 55 at 12–16. Most fundamentally, as discussed *infra* Section II.A, OV

---

[4] *See* Decision & Order at ¶ II.B, *In re Mastercard Inc.*, FTC Docket No. C-4795 (May 30, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/2010011C4795MastercardDurbinOrder.pdf.

Loop fails to plead that Mastercard is a monopolist, without which there can be no essential facilities liability. *Id.* at 13. OV Loop also fails to plead facts showing that access to Mastercard tokenization services is indispensable to its ability to compete. *Id.* at 13–14. OV Loop's only answer is that such services are essential "for processing Mastercard mobile contactless payment transactions." Doc. No. 67 at 20. But that argument does not work for several reasons.

*First*, OV Loop asserts an essential facilities claim only as to its first relevant market—which is not limited to Mastercard but also includes Visa and other "consumer-merchant mobile wallet contactless payments network processing services." Doc. No. 48 at ¶¶ 114, 127–128. So even if cooperation from Mastercard were essential to accessing Mastercard's payment cards, that would not make Mastercard's cooperation essential to participating in the alleged relevant market.

*Second*, OV Loop alleges no facts to show that access to Mastercard tokenization services is essential to competing in the alleged "consumer-merchant mobile wallet contactless payments network processing services" market. Doc. No. 55 at 14–15.

*Finally*, OV Loop fails to respond to the point that, even if access to a particular company's services were essential to participating in the relevant market, that alone does not establish an essential facility when, as here, there are other participants in the market. *See* Doc. No. 55 at 15 (discussing *Blue Cross & Blue Shield United* v. *Marshfield Clinic*, 65 F.3d 1406 (7th Cir. 1995)).

OV Loop's essential facilities claim is a dead end.

## II.   OV LOOP FAILS TO ALLEGE MONOPOLY POWER.

### A.   OV Loop's Monopolization Claims Are Not Cognizable.

Mastercard's moving brief argued that OV Loop fails to allege monopoly power (or a dangerous probability of gaining it) in the first alleged relevant market for "Consumer-Merchant Mobile Wallet Contactless Payments Network Processing Services," because OV Loop's own allegations show that Mastercard has a market share far below the relevant threshold and OV Loop

7

admits that there is another competitor—Visa—with a much larger presence than Mastercard. Doc. No. 55 at 16–19.  OV Loop's answers to these fatal deficiencies are unavailing.

*First*, OV Loop admits in its Amended Complaint that Mastercard's share is 27.41% of card network purchase volume, Doc. No. 67 at 8, which is presumptively insufficient to establish even an *attempted* monopolization claim, much less actual monopoly power.  Doc. No. 55 at 18. OV Loop maintains there is no strict numerical cutoff for market share required to establish monopoly power, Doc. No. 67 at 8, but certainly that cannot mean that *any* market share can suffice.  Nor is there merit in OV Loop's attempt to distinguish the cases Mastercard cited as having been decided on summary judgment (or later), rather than a motion to dismiss.  *Id.* at 7–8. Courts routinely dismiss Section 2 cases because the defendant's market share is not sufficient to constitute a monopoly.  *See, e.g.*, *Distance Learning Co.* v. *Maynard*, No. 19-cv-03801, 2020 WL 2995529, at *8 (N.D. Cal. June 4, 2020).  Indeed, monopolization claims against Mastercard have been dismissed on precisely this ground.  *See Discover Fin. Servs, Inc.* v. *Visa U.S.A., Inc.*, No. 04-cv-7844, 2005 WL 8178487, at *1 (S.D.N.Y. Nov. 4, 2005) ("An actual monopolization claim thus fails as a matter of law where the plaintiff alleges that the defendant has a market share of less than 30 percent. . . .  An attempted monopolization claim likewise fails as a matter of law where the defendant's market share is below that level . . . .").

*Second*, OV Loop also has no good answer to Mastercard's showing that "shared monopolization" claims—allegations that two firms share monopoly power in the relevant market—must fail as a matter of law.  Doc. No. 55 at 17.  Contrary to OV Loop's assertion, Mastercard is not relying only on *PSW, Inc.* v. *VISA USA, Inc.*, No. C.A. 04-347T, 2006 WL 519670, at *11–12 (D.R.I. Feb. 28, 2006) and *Discover*, 2005 WL 8178487, at *1–2—but rather an entire body of case law.  As the cases collected in the leading Areeda treatise show, "[c]ourts

8

and the Federal Trade Commission have *universally* rejected claims that § 2 condemns 'shared' monopoly." PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 810g (4th ed. 2023).

The only contrary authority cited by OV Loop is *Interchange Fee*, 562 F. Supp. 2d at 400, but the claims in that case were fundamentally different than the claims here. There, the alleged antitrust violations were all based on the claim that Mastercard conspired with its bank customers; the individual merchant plaintiffs sought relief under both Sections 1 and 2 of the Sherman Act for the exact same conduct. *Id.* at 395. Here, there can be no question that Visa and Mastercard are entirely separate and independent entities—and indeed competitors. OV Loop concedes as much. Doc. No. 67 at 7–9. Thus, there is no basis in this case to lump the two companies together for purposes of determining monopoly power. Additionally, Mastercard respectfully submits that the Magistrate Judge's decision adopted by the district court in that case was an outlier and cannot withstand the weight of the universal authority rejecting shared monopolization liability.

OV Loop further attempts to distract from the authority rejecting shared monopolization liability by asserting that entry barriers are high and that Mastercard earns large profits. *Id.* at 5–6. Even if that were true, it could not change the fact that OV Loop's own allegations establish (1) that Mastercard has a far smaller presence in the market than Visa, (2) that Mastercard is not a monopolist today, and (3) that there is no "dangerous probability" that Mastercard will drive Visa out of the market and become one. Put simply, the "mono" in "monopoly" means "one" or "single," and there is no "duopolization" offense under Section 2. Two firms cannot be monopolists in the same market. *Midwest Gas Servs, Inc.* v. *Ind. Gas Co.*, 317 F.3d 703, 713 (7th Cir. 2003); *City of Moundridge* v. *Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007).[5]

---

[5] OV Loop's other arguments that it has alleged monopoly power are also without merit. It argues that the FTC "recently sanctioned Mastercard for engaging in anticompetitive conduct through its use of tokens for debit card transactions," Doc No. 67 at 7, but, as discussed above, that matter is

B.     **OV Loop's Efforts to Save its "Second Relevant Market" Are Unavailing.**

OV Loop's "Second Relevant Market," for "Point-of-Sale Universal Mobile Wallet Network Processing Using Mastercard Branded Cards" is indisputably a "single-brand market." Doc. No. 55 at 19–20.  It is also indisputable that single-brand markets are disfavored and may only be maintained in rare circumstances where the plaintiff alleges a number of facts that OV Loop does not.  *Id.* at 20 (citing *Epic Games, Inc.* v. *Apple Inc.*, 67 F.4th 946, 977 (9th Cir. 2023)).

OV Loop fails to respond to or acknowledge the case law concerning single-brand markets. Instead, it cites law concerning a different and irrelevant, issue—submarkets.  Doc. No. 67 at 9 (citing *Vazquez-Romos* v. *Triple-S-Salud, Inc.*, 55 F.4th 286, 297 (1st Cir. 2022)).  Submarket analysis is about identifying a subgroup of customers within a wider relevant market who may be the victims of price discrimination through the exercise of market power by the defendant, even though the defendant may not have the power to charge monopoly prices to other customers in the market.  *See FTC* v. *Whole Foods Market, Inc.*, 548 F.3d 1028, 1038–39 (D.C. Cir. 2008).  OV Loop makes no such allegations.  It simply waves the "submarket" label to distract from the fact that it cannot meet the requirements for alleging a single-brand relevant market.  Its claims as to the second relevant market should thus be dismissed.

## CONCLUSION

For the foregoing reasons, Mastercard respectfully requests that the Court grant its motion to dismiss the Amended Complaint with prejudice.

---

irrelevant to these claims.  *See supra* at 6.  OV Loop also asserts that within the last year other plaintiffs have filed conspiracy cases against Mastercard and Visa, Doc No. 67 at 7, but OV Loop does not allege any conspiracy here, and another plaintiff's unproven conspiracy allegations do not suffice to establish that Mastercard has monopoly power for purposes of Section 2.

Dated: July 18, 2024

Respectfully Submitted,

By: /s/ Samuel N. Rudman
**CHOATE, HALL & STEWART LLP**
Samuel N. Rudman (BBO#: 698018)
Danielle Pelot (BBO#: 661499)
Two International Place
Boston, Massachusetts 02110
Tel.: (617) 248-4034
srudman@choate.com
dpelot@choate.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth A. Gallo (*pro hac vice*)
Donna M. Ioffredo *(pro hac vice)*
2001 K Street NW
Washington, D.C. 20006
Tel.: (202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

Andrew C. Finch *(pro hac vice)*
William B. Michael *(pro hac vice)*
Robert J. O'Loughlin *(pro hac vice)*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
afinch@paulweiss.com
wmichael@paulweiss.com
roloughlin@paulweiss.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*

**CERTIFICATE OF SERVICE**

I, Samuel N. Rudman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              */s/ Samuel N. Rudman*
                                              Samuel N. Rudman (BBO#: 698018)